# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

| | |
|---|---|
| Meldrick Fernandez, | Index No.: |
| Plaintiff, | Date Purchased: |
| | **SUMMONS** |
| v. | |
| | **Basis of Venue:** |
| HSBC USA, N.A., LendingClub Corporation, Elan Financial Services and Experian Information Solutions, Inc. | **CPLR §509:** Venue designated by Plaintiff. |
| | **CPLR §503(a):** Plaintiff's principal place of residence |
| Defendants. | |

**TO THE ABOVE-NAMED DEFENDANT(S):**

      **YOU ARE HEREBY SUMMONED,** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York).

      **YOU ARE HEREBY NOTIFIED THAT,** should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: Uniondale, New York
      January 20, 2023

**Defendants Addresses:**

HSBC USA, N.A.
110 W. Broadway
New York, New York 10013
Registered Agent:
c/o The Corporation Trust, Inc.
2405 York Road, Suite 201
Lutherville Timonium Maryland 21093

LendingClub Corporation
595 Market Street, Suite 200
San Francisco, California 94105
Registered Agent:

**SANDERS LAW GROUP**

By: */s/ Alain Cesar*
Alain Cesar, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Office: (516) 203-7600
Direct: (516) 203-7612
Email: acesar@sanderslaw.group
File No.: 127116
*Attorneys for Plaintiff*

Corporation Service Company
80 State Street
Albany New York 12207

Elan Financial Services
800 Nicollet Mall
Minneapolis, MN 55402

Experian Information Solutions, Inc.
475 Anton Blvd.
Costa Mesa, CA 92626
Registered Agent:
CT Corporation System
28 Liberty Street, New York, NY 10005

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

---

Meldrick Fernandez,

                        Plaintiff,

            v.

HSBC USA, N.A., LendingClub Corporation,
Elan Financial Services and Experian
Information Solutions, Inc.,

                        Defendants.

---

Index No:

**COMPLAINT**

---

Meldrick Fernandez ("*Plaintiff*"), by and through the undersigned counsel, complains, states and alleges against HSBC USA, N.A., ("*HSBC*"), LendingClub Corporation ("*LendingClub*"), Elan Financial Services (*Elan*") (HSBC, Lending Club and Elan are hereinafter collectively referred to as "*Furnisher Defendants*") and Experian Information Solutions, Inc. ("*Experian*" or "*CRA Defendant*") (Furnisher Defendants and CRA Defendant are collectively referred to as "*Defendants*") as follows:

## INTRODUCTION

1.      This action seeks to recover for violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §1681 *et seq*, and New York Fair Credit Reporting Act, NY CLS General Business Law Section § 380 *et seq* ("*NY FCRA*").

2.      This action seeks relief against CRA Defendant for reporting inaccurate and/or misleading information on Plaintiff's credit report in violation of §1681e(b); and for CRA Defendant's failure to conduct a reasonable investigation into Plaintiff's disputes in violation of §1681i(a); and for their violations of §1681c-2 for failing to block the information after receipt of the notice of identity theft dispute.

3.      This action also seeks relief against CRA Defendant pursuant to NY FCRA § 380-F for failing to comply with the proper procedures for resolving disputes after a consumer disputes an item and failing to promptly remove inaccurate and/or misleading information.

4.      This action seeks relief against Furnisher Defendants for violations of the Fair Credit Reporting Act under 15 U.S.C. §1681s-2(b), for their failure to conduct a reasonable and/or

3

good faith investigation into Plaintiff's notice of disputes and failing to delete, correct or block the inaccurate information.

5.      Plaintiff seeks an order enjoining Defendants' injurious conduct and to recover, *inter alia*, statutory damages, prejudgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendants' erroneous reporting of inaccurate information in Plaintiff's consumer background reports.

6.      As a result of Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: a decreased credit score; decreased credit worthiness and credit capacity; emotional and mental pain due to the anxiety and stress of the negative credit impact of the errors at issue despite taking steps to resolve it; the dissemination of this inaccurate reporting to third party prospective creditors; and at least one denial of credit.

7.      Furthermore, Defendants are also responsible for the cost in time and money associated with requesting credit reports, consulting with professionals regarding resolving this inaccurate reporting and submitting a dispute letter via certified mail.

8.      Plaintiff seeks to recover monetary damages for Defendants' violations of the FCRA and to have an order issued by this court enjoining Defendants from persisting in their violative behaviors.

## JURISDICTION AND VENUE

9.      Under CPLR §§ 301 and 302, this Court has jurisdiction over the action in that Defendants conducts business in the State of New York and have purposely availed themselves of the privilege of conducting business in the State of New York.

10.     Under CPLR § 503(a), venue is appropriate in Bronx County because Plaintiff resides within Bronx County and a substantial part of the events and omissions giving rise to Plaintiff's claim occurred within the Court's jurisdiction.

## PARTIES

11.     Plaintiff Meldrick Fernandez is an adult who is a citizen of the State of New York residing in Bronx County, New York.

12.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), NY FCRA § 380-a(b).

4

13.     Defendant HSBC is a "furnisher of information" (hereinafter "*Furnisher*") as that term is defined by 15 U.S.C. § 1681s-2(b).

14.     Defendant HSBC is a national banking association and has a principal place of business located at 110 W. Broadway, New York, NY 10013 and is registered to do business in the State of New York.

15.     HSBC may be served with process on its registered agent, The Corporation Trust, Inc. at 2405 York Rd, Suite 201, Lutherville, Timonium, Maryland 21093.

16.     Defendant LendingClub is a Furnisher as that term is defined by 15 U.S.C. § 1681s-2(b).

17.     Defendant LendingClub is a corporation that has a principal place of business located at 595 Market Street, Suite 200, San Francisco, CA 94105 and is registered to do business in the State of New York.

18.     LendingClub may be served with process on its registered agent, The Corporation Service Company, at 80 State Street, Albany, New York, 12207.

19.     Defendant Elan is a Furnisher as that term is defined by 15 U.S.C. § 1681s-2(b).

20.     Defendant Elan is a financial services company with a principal place of business located at 800 Nicollet Mall, Minneapolis, MN 55402.

21.     Defendant Experian is a consumer reporting agency (hereinafter "*CRA*"), as defined under 15 U.S.C. § 1681a(f) and NY FCRA § 380-A(e), that regularly conducts business in this judicial district.

22.     Defendant Experian is an Ohio corporation which has a principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626, is registered to do business in the State of New York and may be served with process upon CT Corporation System, its registered agent for service of process at 28 Liberty Street, New York, NY 10005.

23.     Defendant Experian by contractual agreement, disbursed consumer background reports for remuneration to third parties.

## SUBSTANTIVE ALLEGATIONS OF FCRA

24.     Congress enacted § 1681 *et seq.* of Title 15 of the United States Code, which § 1681(a) which states as follows:

> (1)     The banking system is dependent upon fair *and accurate* credit reporting. *Inaccurate credit reports directly impair the efficiency of the banking system*, and

unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2)     An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3)     Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4)     There is a ***need to insure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

(Emphasis added).

25.     FCRA mandates that CRAs adhere to the following duties: (i) to assure maximum possible accuracy of information when preparing consumer reports and to set up reasonable policies procedures to maintain compliance with this minimum reporting standard; and (ii) to reinvestigate the facts and circumstances surrounding a dispute by consumers and to appropriately and timely correct any inaccuracies, including by quickly notifying the furnisher and any other parties in the distribution chain of the disputed inaccuracies.

26.     CRAs compile, maintain, and report information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and general reputation. That information is then made available for use by third parties in credit transactions involving consumers, for employment purposes, for the underwriting of insurance for consumers, and even housing.

27.     Plaintiff has a legally protected interest in the Defendants fulfilling their duties under the FCRA so that the credit information being furnished and reported by them is maintained fairly, with the maximum levels of confidentiality, accuracy, and relevancy.

28.     Plaintiff's injury is particularized and actual and is directly traceable to Defendants' conduct. The deprivation of Plaintiff's rights will be redressed by a favorable decision herein.

## FACTUAL ALLEGATIONS

29.     In early 2017, Plaintiff Meldrick Fernandez signed up for the services of what he believed to be a credit repair company called Cash Flow Partners LLC, for the purpose of improving his credit.

30.    . Soon thereafter, Plaintiff became the victim of an identity theft scheme in which Cash Flow Partners LLC used his personal information and documents to open numerous credit cards and loans in Plaintiff's name without his authorization or approval.

31.    Plaintiff did not authorize these frauds and never benefitted or profited from them.

32.    These frauds were proliferated by Edward Espinal who plead guilty on June 11, 2020 to conspiracy to commit bank fraud. *See* Department of Justice report dated June 11, 2020 annexed hereto as **Exhibit A**.

33.    Plaintiff was one of the victims of Edward Espinal's "vast fraud scheme" and Plaintiff has three fraudulent accounts continuing to report on his consumer credit report with Experian as follows:

a.    Elan Financial | Credit Card | Opened: 4/1/2017 | Balance $8,421

b.    HSBC Bank | Credit Card | Opened: 8/17/2018 | Balance $0

c.    LendingClub | Secured Loan | Opened: 8/22/2018 | Balance $28,605

(All accounts above collectively referred to as "*fraudulent accounts*")

34.    Plaintiff has attempted unsuccessfully to dispute these fraudulent accounts with Furnisher Defendants and even paid off the HSBC Bank debt (now reflects a $0 balance) despite the fact that he was not responsible for opening the account nor any of its underlying transactions.

35.    Notably, only Experian continues to report these fraudulent accounts on Plaintiff's credit reports as Equifax and Trans Union have both removed the fraudulent accounts.

36.    On December 10, 2021 Plaintiff filed a FTC Report ("*ID Theft Report*") for the accounts so that he may attach it to formal disputes to CRAs and Furnisher Defendants.

37.    The FTC constitutes a law enforcement agency.

38.    Plaintiff has the disputed the above Furnisher Defendant accounts by sending FCRA dispute letters in each of the following months

d.    May 2022 ("*May 2022 FCRA Dispute Letter*");

e.    June 2022 ("*June 2022 FCRA Dispute Letter*");

f.    July 2022 ("*July 2022 FCRA Dispute Letter*");

g.    August 2022 ("*August 2022 FCRA Dispute Letter*");

h.    September 2022 ("*September 2022 FCRA Dispute Letter*"); and

i.    October 2022 ("*October 2022 FCRA Dispute Letter*").

(The aforementioned dispute letters are collectively referred to as the "*2022 FCRA Disputes*")

39.    The 2022 FCRA Disputes included detail about the bank fraud proliferated by Cash Flow Partners LLC and attached the ID Theft Report.

40.    The 2022 FCRA Disputes have been confirmed either by United Postal Service tracking or via investigation results Plaintiff received from Experian directly.

41.    Upon information and belief, CRA Defendant forwarded the notice of dispute and all relevant information regarding the 2022 FCRA Disputes to Furnisher Defendants, within five business days of receipt of same.

42.    Upon information and belief, Furnisher Defendants received the notices of dispute and all relevant information from CRA Defendant for each aforementioned FCRA Dispute Letter.

43.    Following Defendants' thirty (30) day FCRA investigation period of each respective 2022 FCRA Dispute, Defendants continued to report the fraudulent accounts, whereas non-party CRAs, Equifax and Trans Union, deleted the fraudulent accounts entirely.

44.    Upon information and belief, Defendants either failed to perform any investigation at all or performed an unreasonable investigation and erroneously verified the fraudulent accounts as accurate.

45.    Had Defendants performed a reasonable investigation, the fraudulent accounts at issue would have been blocked or deleted entirely.

46.    Alternatively, and, upon information and belief, CRA Defendant failed to provide Furnisher Defendants with the notice of dispute and all relevant information.

47.    Alternatively, and, upon information and belief, Furnisher Defendants provided CRA Defendant with the correct information and directives regarding the fraudulent accounts and CRA Defendant failed to properly process or furnish this data to Plaintiff's credit report.

48.    As such, CRA Defendant failed to practice reasonable procedures to assure maximum possible accuracy.

49.    As a result of Defendants' conduct in misreporting and failing to reasonably investigate the dispute and correct inaccuracies, Plaintiff has sustained actual damages including, but not limited to: a decreased credit score; decreased credit worthiness and credit capacity; wrongly inflated liabilities; emotional and mental pain due to the anxiety and stress of the negative credit impact of the errors at issue despite taking steps to resolve it; the dissemination of this

inaccurate reporting to third party prospective creditors; and at least one denial of credit.

50.     Defendants are also responsible for the cost in time and money associated with requesting credit reports, consulting with professionals regarding resolving this inaccurate reporting and submitting a dispute letter via certified mail.

## FIRST COUNT
### CRA Defendant's Violations of the FCRA, 15 U.S.C. §1681e(b).

51.     Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

52.     CRA Defendant systemically violated 15 U.S.C. §1681e(b) by failing to adhere to, maintain and/or establish reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff they published.

53.     Upon receipt of Plaintiff's disputes, CRA Defendant was legally required to: (i) conduct a reasonable investigation or re-investigation into all the circumstances surrounding the dispute; and (ii) when and if appropriate, remove any inaccurate information following the performance of the reasonable investigation.

54.     Upon information and belief, CRA Defendant's conduct in the instant matter is representative of their normal policies and procedures or lack thereof for maintaining accurate credit reporting.

55.     In violation of §§ 1681e(b) and 1681(i), CRA Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information attributable to Plaintiff, by reporting inaccurate information in Plaintiff's consumer background report.

56.     Plaintiff disputed the inaccurate information and CRA Defendant knowingly or intentionally failed to perform a reasonable investigation to remove the inaccurate information.

57.     Plaintiff disputed the inaccurate information and CRA Defendant recklessly failed to perform a reasonable investigation to remove the inaccurate information.

58.     Alternatively, Plaintiff disputed the inaccurate information and CRA Defendant negligently failed to perform a reasonable investigation to remove the inaccurate information.

59.     As a result of CRA Defendant's violations of 15 U.S.C. §1681, Plaintiff suffered actual damages which have been further described in the above statement of facts.

60.     In violation of § 1681o and § 1681n, CRA Defendant's conduct was a direct and proximate cause of Plaintiff's injury.

61.     CRA Defendant is liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures.

62.     As a result of CRA Defendant's violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

63.     For the foregoing reasons, CRA Defendant violated 15 U.S.C. § 1681e(b) and are liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND COUNT
### CRA Defendant's Violations of the FCRA, 15 U.S.C. §1681i *et seq.*

64.     Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

65.     CRA Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to determine whether the disputed information was accurate and record the current status of the disputed information or delete the item from Plaintiff's credit report.

66.     CRA Defendant violated 15 U.S.C. § 1681i(a)(1) by relying upon only a cursory review of basic information and deferring entirely upon Furnisher Defendants and merely parroting information received from the furnisher.

67.     CRA Defendant violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Furnisher Defendants all of the relevant information regarding Plaintiff and his dispute.

68.     CRA Defendant violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff regarding the dispute.

69.     CRA Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or correct the inaccurate information upon reinvestigation.

70.     CRA Defendant never: (i) contacted Plaintiff to follow up on, verify and/or elicit more specific information about Plaintiff's dispute; (ii) contacted any third parties that would have relevant information concerning Plaintiff's dispute; (iii) forwarded any relevant information concerning Plaintiff's dispute to Furnisher Defendants; or (iv) requested or obtained any credit applications, or other relevant documents from Furnisher Defendants. As such there is no evidence of a reasonable investigation being conducted.

71.    As a result of CRA Defendant's violations of 15 U.S.C. §1681, Plaintiff suffered actual damages which have been further described above in the statement of facts.

72.    CRA Defendant's violations were willful because they had knowledge of the issue after receiving a detailed dispute letter and/or reckless disregard for the information provided in that dispute, rendering CRA Defendant individually liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

73.    In the alternative, CRA Defendant was negligent, which entitles the Plaintiff to recovery under 15 U.S.C. § 1681o.

74.    For the foregoing reasons, CRA Defendant violated 15 U.S.C. § 1681i and is liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## THIRD COUNT
### Furnisher Defendants' Violations of the FCRA, 15 U.S.C. §1681s-2(b)

75.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

76.    At all times pertinent hereto, Furnisher Defendant is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher of information" to the credit reporting agencies.

77.    Furnisher Defendants have a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a credit dispute directly from a consumer. *See* 15 U.S.C. § 1681s-2(a).

78.    Furnisher Defendants has an obligation under 15 U.S.C. § 1681s-2(b) to investigate a dispute after receiving notice of the disputed item from a consumer reporting agency.

79.    FCRA requires furnishers, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by that furnisher–to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

80.    On each occasion referenced in the above statement of facts where a dispute was sent to a CRA Defendant, upon information and belief, CRA Defendant provided Furnisher Defendants the notice of dispute and all relevant information regarding the disputes.

81.     Upon information and belief, on each occasion referenced in the above statement of facts where a dispute was sent to CRA Defendant, Furnisher Defendants received the notice of dispute and all relevant information regarding the disputes.

82.     Upon information and belief, Furnisher Defendants violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully, reasonably and in good faith investigate Plaintiff's disputes.

83.     Furnisher Defendants failed to correct or remove the inaccurate information from the account and credit report and report those results to all other credit reporting agencies to which the furnisher has provided the inaccurate information.

84.     Upon information and belief, Furnisher Defendants' conduct in the instant matter is representative of their normal policies and procedures in responding to disputes by providing only a cursory review of basic information and failing to investigate any further or failing to investigate and remediate any errors entirely.

85.     Furnisher Defendants violated § 1681s-2(b) by willfully failing to fully, properly and reasonably conduct an investigation of the inaccurate information that Plaintiff disputed.

86.     Furnisher Defendants violated § 1681s-2(b) by willfully failing to review all relevant information concerning Plaintiff's account as provided.

87.     Furnisher Defendants violated § 1681s-2(b) by willfully failing to report the results of its investigation of the inaccurate information to all credit reporting agencies.

88.     Furnisher Defendants violated § 1681s-2(b) by willfully failing to modify or delete incomplete or inaccurate information or information it cannot verify in Plaintiff's file after conducting an investigation.

89.     Furnisher Defendants violated § 1681s-2(b) by willfully failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to credit reporting agencies.

90.     Furnisher Defendants violated § 1681s-2(b) by willfully failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

91.     Furnisher Defendants' conduct was willful in that it knew of the identity theft after receiving the dispute letter(s) from the consumer reporting agencies continued to report the debt anyway.

92.     Alternatively, Furnisher Defendants exhibited a reckless disregard and unjustifiably high risk to the Plaintiff when it failed to conduct a reasonable investigation despite receipt of information that the debt was a result of identity theft.

93.     Furnisher Defendants violated § 1681s-2(b) by negligently failing to review all relevant information concerning Plaintiff's account as provided.

94.     Furnisher Defendants violated § 1681s-2(b) by negligently failing to report the results of its investigation of the inaccurate information to all credit reporting agencies.

95.     Furnisher Defendants violated § 1681s-2(b) by negligently failing to modify or delete incomplete or inaccurate information or information it cannot verify in Plaintiff's file after conducting an investigation

96.     Furnisher Defendants violated § 1681s-2(b) by negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to credit reporting agencies

97.     Furnisher Defendants violated § 1681s-2(b) by negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

98.     Further, Plaintiff suffered actual damages, further described in the above in statement of facts.

99.     Furnisher Defendants are liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

100.    Alternatively, Furnisher Defendants' conduct was negligent, failing to exercise reasonable care when it failed to conduct a reasonable investigation, thereby entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101.    For the foregoing reasons, Furnisher Defendants violated 15 U.S.C. § 1681s-2(b) and is liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to § 1681n and § 1681o.

## FOURTH COUNT
### CRA Defendant's Violations of the NY FCRA § 380

102.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

103.    NY FCRA § 380-f(a) specifically provides that upon receipt of a consumer's dispute, a CRA promptly re-investigate and record the current status of such information and promptly notify the consumer of the result of its investigation, its decision on the status of the information and Plaintiff's rights pursuant to that section.

104.    In addition, NY FCRA § 380-f(b) specifically provides that when a "consumer reporting agency finds that an item is in error or that it can no longer be verified, it shall:

(1)    Promptly expunge the item and otherwise correct the file

(2)    Refrain from reporting the item in subsequent consumer reports,

(3)    Clearly and conspicuously disclose to the consumer his rights to make a request for notification and upon request of the consumer, promptly notify any person designated by the consumer who has received information regarding the item during the previous year that an error existed and shall furnish such person with corrected information…"

105.    Here a duty to conduct a reasonable investigation was triggered by CRA Defendant upon each receipt of any FCRA dispute letter referenced in the above statement of facts.

106.    CRA Defendant failed to conduct a reasonable investigation and failed to promptly correct the tradeline of the account at issue.

107.    CRA Defendant also failed to provide the Plaintiff notice of their rights pursuant to NY FCRA § 380-f(b)(3).

108.    CRA Defendant's failure to adequately re-investigate these disputes despite being given the information constitutes a knowing or at a minimum a reckless disregard of their duties to Plaintiff.

109.    As such, CRA Defendant's violations were willful, rendering them liable for punitive damages in an amount to be determined by the court and attorney's fees pursuant to NY FCRA § 380-L.

110.    At a minimum, CRA Defendant's conduct was negligent in that they failed to use reasonable care and diligence in their obligations to the consumer rendering them liable for actual damages and attorney's fees pursuant to NY FCRA § 380-M.

111.    As a direct result of the above violations of the NY FCRA by CRA Defendant, Plaintiff suffered damages as described in the above statement of facts.

112.    As a result of the above violations of the NY FCRA, CRA Defendant are willfully and/or negligently liable to Plaintiff for actual damages, punitive damages, attorney's fees and costs pursuant to NY FCRA §§ 380-L and 380-M.

## FIFTH COUNT
### CRA Defendant's Violations of the FCRA, 15 U.S.C. §1681c-2

113.    Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

114.    Pursuant to 15 U.S.C. § 1681c-2(a), a CRA must block the reporting of any information in a consumer's file that is alleged to be a result of identity theft, not later than four (4) business days after receiving notice of the identity theft.

115.    This notice to the CRA must include an identity theft report; appropriate personal identification and a statement that the information is not related to any transaction by the consumer.

116.    Here, in compliance with 15 U.S.C. § 1681c-2(a)(1) through 1681c-2(a)(4), Plaintiff sent a dispute detailed in the above statement of facts which included the appropriate proof, identification and report to a law enforcement agency stated that these accounts and transactions were a result of identity theft.

117.    CRA Defendant violated 15 U.S.C. § 1681c-2(b)(1) by failing to promptly notify Furnisher Defendants that the information was a result of identity theft.

118.    CRA Defendant violated 15 U.S.C. § 1681c-2(b)(2) by failing to promptly notify Furnisher Defendants that an identity theft report has been filed.

119.    CRA Defendant violated 15 U.S.C. § 1681c-2(b)(3) by failing to promptly notify Furnisher Defendants that a block had been requested.

120.    CRA Defendant violated 15 U.S.C. § 1681c-2(a) by failing to block information resulting from identity theft.

121.    CRA Defendant violated 15 U.S.C. § 1681c-2(c)(2) by failing to notify the consumer that they would decline to block the disputed fraudulent accounts or had rescinded the blocking of these accounts.

122.    As a result of CRA Defendant's violations of 15 U.S.C. §1681c-2, Plaintiff suffered actual damages which have been further described in the statement of facts.

123.    CRA Defendant's violations were willful in their knowing and/or reckless disregard, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

124.     Alternatively, CRA Defendant violations were a result of negligence, and Plaintiff is entitled to recovery under 15 U.S.C. § 1681o.

125.     For the foregoing reasons, CRA Defendant violated 15 U.S.C. § 1681c-2 and is liable to Plaintiff for actual damages, statutory damages, punitive damages, costs and attorney's fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

126.     Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendants, as follows:

a    Adjudging that Defendants actions violated the FCRA and NY FCRA; and

b    An order enjoining Defendants from persisting in their violative behaviors;

c    Granting Plaintiff actual damages against Defendants pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a);

d    Granting Plaintiff statutory damages against Defendants pursuant to 15 U.S.C. § 1681n(a)(1)(A);

e    Granting Plaintiff punitive damages against Defendants pursuant to 15 U.S.C. § 1681n(a)(2);

f    Granting Plaintiff costs and reasonable attorney's fees against the Defendants pursuant to 15 U.S.C. §§ 1681n(c) and 1681o(b);

g    Granting Plaintiff actual damages, punitive damages, attorney's fees and costs pursuant to NY FCRA §§ 380-L and 380-M;

h    Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

i    Such other and further relief as the Court determines is just and proper.

DATED:     January 20, 2023
           Uniondale, New York

                         **SANDERS LAW GROUP**

                         By: */s/ Alain Cesar*
                         Alain Cesar, Esq.
                         333 Earle Ovington Blvd, Suite 402
                         Uniondale, NY 11553
                         Email: acesar@sanderslaw.group
                         Office: (516) 203-7600
                         Direct: (516) 203-7612
                         Fax: (516) 282-7878
                         *Attorneys for Plaintiff*
                         Our File No.: 127116

## VERIFICATION BY ATTORNEY

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss.: |
| COUNTY OF NASSAU | ) |

 I, Alain Cesar, an attorney duly admitted to practice law in the State of New York, hereby affirm under penalty of perjury: I am an attorney associated with Sanders Law Group, attorneys for Meldrick Fernandez, the plaintiff in the foregoing matter, with an office located at 333 Earle Ovington Blvd, Suite 402, Uniondale, NY 11553. I have read the foregoing Complaint and know the contents thereof, and that the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

DATED:  January 20, 2023
     Uniondale, New York

              */s/ Alain Cesar*
              Alain Cesar, Esq.

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

DISTRICT *of* NEW JERSEY

U.S. Attorneys » District of New Jersey » News

**Department of Justice**

U.S. Attorney's Office

District of New Jersey

FOR IMMEDIATE RELEASE                                    Thursday, June 11, 2020

# Owner of Business Consulting Firm Admits Orchestrating Multimillion-Dollar Bank Fraud and Securities Fraud Scheme

NEWARK, N.J. – A Passaic County, New Jersey, man who founded and owned a business consulting firm admitted today to orchestrating a multimillion-dollar bank fraud and securities fraud scheme operated through that firm, U.S. Attorney Craig Carpenito announced.

Edward Espinal, 44, of Wayne, New Jersey, the chief executive officer of Cash Flow Partners LLC (Cash Flow) pleaded guilty by videoconference before U.S. District Judge Kevin McNulty to an information charging him with one count of conspiracy to commit bank fraud and one count of securities fraud.

"Edward Espinal coordinated a vast fraud scheme that lured people into taking out fraudulent loans that his company helped obtain and, in many cases, put that borrowed money into sham investments he also controlled," U.S. Attorney Carpenito said. "His complex scam tricked numerous investors out of a substantial amount of money, and now he will have to pay for his crimes."

"This defendant is the quintessential con artist," Acting FBI Special Agent in Charge Douglas Korneski said. "He played a shell game with other people's hard-earned money, making promises he never intended to keep, and walking away with ill-gotten gains while leaving them high and dry. Fraudsters like Edward Espinal keep the FBI in business, and we work diligently to bring his type to justice."

According to documents filed in this case and statements made in court:

### The Bank Fraud Conspiracy

Espinal was the founder and chief executive officer of Cash Flow and controlled the company's operations. From March 2016 through December 2019, Espinal led and directed a bank fraud conspiracy designed to obtain millions of dollars in loans from banks on the basis of false representations. To attract customers, Cash Flow released internet advertisements and held seminars offering to assist customers with low-paying salaries in obtaining loans. These advertisements included promotional videos featuring Espinal and a former telenovela actor. Customers contacted Cash Flow and were routed to the company's sales department.

Employees in the sales department then encouraged customers to sign up for various loan programs that Cash Flow provided and to enter into contracts with Cash Flow. Under those contracts, employees would help customers obtain loans from banks. The Cash Flow contracts permitted customers to keep a portion of the loan proceeds and customers agreed to provide the remaining percentage of the proceeds to Cash Flow. Cash Flow agreed to pay off the loans on behalf of its customers.

Cash Flow then used false information and fraudulent documents to obtain loans for its customers for which they otherwise would not have qualified, and posed as the customers in communications with the banks.

### The Securities Fraud

From July 2016 through September 2019, Espinal obtained more than $5 million in investments from victim investors on the basis of false and fraudulent pretenses and representations.

Espinal solicited investments from prospective customers using a marketing campaign on Spanish language television channels and the internet, the "Cash Flow TV" YouTube page, and live presentations in Cash Flow's offices and elsewhere. Espinal also solicited investments from individuals who obtained loans through Cash Flow's bank fraud conspiracy, encouraging loan customers to invest loan proceeds in Cash Flow's investment program. Once investors agreed to invest in Cash Flow, Espinal issued "promissory notes" to investors that guaranteed monthly investment returns between 1.25 percent and 4 percent. The promissory notes stated that Cash Flow would return investors' principal either one year from the date of the promissory note, or 60 days after investors demanded payment. Espinal and other Cash Flow employees signed the promissory notes on behalf of Cash Flow.

Espinal made a number of misrepresentations to investors. He told investors that he would pool their funds with the funds of other investors in investments related to real estate, real estate companies, a gold mine in Ecuador, and construction projects in countries outside of the United States. In reality, Espinal used investor funds to pay returns to earlier investors, to pay for personal expenses for himself, his family, and another Cash Flow employee, to perpetuate the bank fraud scheme, and to market the bank fraud and investment scheme to future victims. Espinal falsely claimed that Cash Flow's purported real estate fund, Cash Flow Capital, was "licensed" by the Securities and Exchange Commission. He guaranteed monthly returns on investment based on the purported proceeds from the sale of properties in Cash Flow's investment portfolio. In reality, Espinal did not sell Cash Flow properties, so no profits were derived from the sale of Cash Flow properties.

Two other individuals, Raymundo Torres and Jennie Frias, have previously pleaded guilty to their roles in the Cash Flow bank fraud conspiracy and are awaiting sentencing.

The conspiracy to commit bank fraud charge carries a maximum potential penalty of 30 years in prison and a $1 million fine. The securities fraud counts carry a maximum penalty of 20 years in prison and a $5 million fine. Sentencing is scheduled for Oct. 13, 2020.

Individuals who believe they may have information about this case may contact the FBI at 1-800-CALL-FBI (225-5324).

The U.S. Securities and Exchange Commission (SEC) has filed a civil complaint against Espinal based on the allegations underlying the securities fraud charge.

U.S. Attorney Carpenito credited special agents of the FDIC-Office of the Inspector General (FDIC-OIG), under the direction of Special Agent in Charge Patricia Tarasca in New York, and special agents of the FBI, under the direction of Acting Special Agent in Charge Douglas Korneski in Newark, with the investigation

leading to today's guilty plea. He also thanked the SEC for the assistance provided by its Enforcement Division.

The government is represented by Assistant U.S. Attorneys Ari B. Fontecchio and J. Stephen Ferketic of the U.S. Attorney's Criminal Division in Newark.

---

**Attachment(s):**
Download Espinal,Information.pdf

**Topic(s):**
Financial Fraud
Securities, Commodities, & Investment Fraud

**Component(s):**
USAO - New Jersey

**Press Release Number:**
20-175

Updated June 11, 2020